62 F.3d 1415
 NOTICE: Fourth Circuit Local Rule 36(c) states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
UNITED STATES of America, Plaintiff-Appellee,
v.
Furman LATTIMORE, Jr., Defendant-Appellant.
 No. 94-5915.
 United States Court of Appeals, Fourth Circuit.
 Argued May 5, 1995.
 Decided Aug. 8, 1995.
Rehearing In Banc Granted; Opinion Vacated Nov. 28, 1995.
 
 ARGUED: Jack H. Lynn, Greenville, SC, for Appellant.
 David Calhoun Stephens, Assistant United States Attorney, Greenville, SC, for Appellee.
 ON BRIEF: J. Preston Strom, Jr., United States Attorney, Greenville, SC, for Appellee.
 Before HALL, WILKINS, and WILLIAMS, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Furman Lattimore, Jr. appeals a decision of the district court denying his motion to suppress evidence seized during a search of his automobile that was conducted pursuant to his oral and written consent. Finding no error, we affirm.
 
 I.
 
 2
 The facts are not seriously disputed. On October 23, 1993, Lattimore was stopped by Trooper R.D. Frock of the South Carolina Department of Public Safety for exceeding the speed limit. Trooper Frock invited Lattimore to accompany him to his patrol vehicle while he prepared a ticket for failure to wear a seat belt and a warning ticket for the speeding violation. Lattimore obliged. After issuing the citations and returning Lattimore's driver's license, and as Lattimore prepared to exit the patrol vehicle, Trooper Frock asked Lattimore whether there were any narcotics or contraband in Lattimore's automobile. Lattimore responded in the negative; Trooper Frock then requested and received Lattimore's oral consent to search the vehicle.[1] Prior to conducting the search, while Trooper Frock prepared a written consent form, he and Lattimore engaged in a casual discussion about high school football. When Trooper Frock offered Lattimore the consent form for his signature, Lattimore inquired whether the search would be conducted even if he did not consent. Trooper Frock responded, "Not really. If you don't [consent], I feel you're hiding something; therefore, I'm going to call a drug dog right up the road here ... and let him search your car." Lattimore then said, "That's what I'm saying.... This really don't make no difference." Nevertheless, he signed the consent form. During the search of the vehicle, Trooper Frock discovered a bag containing approximately 95 grams of cocaine base, razor blades, a scale, and plastic bags.
 
 
 3
 Lattimore subsequently moved to suppress the evidence seized during the search, alleging that he had not voluntarily consented. Although the district court noted some concern about Trooper Frock's statement regarding the "drug dog," it denied the motion to suppress, emphasizing that "there was nothing else following that [statement] which indicated that the defendant did not fully understand his right to refuse.... [T]he court finds that not only did the defendant understand what his rights were, he voluntarily and understandingly waived his rights ... and that this was a consent search." Lattimore subsequently pled guilty to possessing with the intent to distribute cocaine base, see 21 U.S.C.A. Sec. 841(a)(1) (West 1981), reserving the right to challenge the denial of the motion to suppress.
 
 II.
 
 4
 Lattimore offers two arguments in support of his contention that the district court erred in denying the motion to suppress. He first claims that his consent to the search was not voluntarily given. Alternatively, Lattimore maintains that Trooper Frock exceeded the permissible scope of the traffic stop and that this illegal detention vitiated his consent to the search. We review the legal conclusions of the district court de novo and its factual conclusions for clear error. United States v. Rusher, 966 F.2d 868, 873 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992).
 
 A.
 
 5
 Lattimore's primary argument is that his consent to the search of his vehicle was invalid because it was coerced by Trooper Frock's threat to utilize a "drug dog" in the event that Lattimore refused permission for the search. The district court properly considered the totality of the circumstances in determining whether Lattimore's consent was voluntarily given. See Schneckloth v. Bustamonte, 412 U.S. 218, 227 (1973). Nothing in the videotaped record of the traffic stop indicates an environment that was coercive or intimidating; to the contrary, Lattimore appears to be quite relaxed throughout. Moreover, the written consent form executed by Lattimore specifically advised him of his right to refuse to consent to the search. Further, Lattimore without hesitation or equivocation gave his oral consent prior to being asked to sign the written consent form. Therefore, we cannot say that the district court was clearly erroneous in determining, under a totality of the circumstances test, that Lattimore knowingly and voluntarily consented to the search.
 
 B.
 
 6
 Lattimore also asserts that Trooper Frock exceeded the lawful scope of the traffic stop when he questioned Lattimore about the presence of narcotics or contraband in his vehicle and subsequently requested permission to search the automobile. Lattimore maintains that this questioning amounted to an illegal detention in violation of Terry v. Ohio, 392 U.S. 1 (1968). We disagree.
 
 
 7
 The reasonableness of a traffic stop is analyzed under the Terry framework for investigative detentions. Rusher, 966 F.2d at 875. In determining the validity of a detention under Terry, "our inquiry is a dual one--whether the officer's action was justified at its inception, and whether it was reasonably related in scope to the circumstances which justified the interference in the first place." Terry, 392 U.S. at 19-20.[2]
 
 
 8
 In Rusher, we noted that the proper investigative scope for a routine traffic stop is limited. Once the officer has verified the driver's license, confirmed his authority to operate the vehicle, and issued a citation, the driver may not be detained further unless the officer has a reasonable suspicion of serious criminal activity. Rusher, 966 F.2d at 876-77. The Government concedes that Trooper Frock had no reasonable suspicion of criminal activity when he asked Lattimore about the presence of narcotics or contraband in his vehicle. Nevertheless, we decline to find any illegality. In Rusher, this court examined nearly identical facts and concluded that although the initial traffic stop was a seizure, the detention ended and became a consensual encounter when the defendant's driver's license was returned to him. Id. at 877.[3]
 
 
 9
 Here, the detention of Lattimore for the traffic stop ended when Trooper Frock issued the citations and returned Lattimore's license. During the subsequent conversation between Trooper Frock and Lattimore "a reasonable person would have felt free to decline the officer['s] requests or otherwise terminate the encounter." Florida v. Bostick, 501 U.S. 429, 438 (1991). Thus, the encounter was consensual, and there is no illegality to taint Lattimore's consent to the search.
 
 
 10
 Having found Lattimore's allegations of error to be without merit, we affirm.
 
 AFFIRMED
 HALL, Circuit Judge, dissenting:
 
 11
 I dissent because I believe that the evidence in this case, particularly the videotape of the entire encounter between Trooper Frock and Lattimore, compels a finding that Lattimore's "consent" was involuntarily given and, moreover, that Lattimore was illegally seized prior to the search.
 
 
 12
 Lattimore was stopped by Trooper Frock for speeding. After Frock had written out a warning ticket and had returned Lattimore's license and registration, he asked for consent to search the car. Lattimore was obviously hestitant, but he finally mumbled something,[1] and Frock began to prepare the written consent form. After he presented the form to Lattimore for his signature, they had the following conversation:[2]
 
 
 13
 Lattimore: On that, what's the difference on that?
 
 
 14
 Frock: What's you mean?
 
 
 15
 Lattimore: If I say yes, if I say no, it's still ...
 
 
 16
 Frock: Let me explain something to you. I'm on a special team, I travel round the state. This is all I do. I search ...
 
 
 17
 Lattimore: I was watching that on ...
 
 
 18
 Frock: I search 97% of the cars I stop. It don't matter if you're 18 or 88 years old, black, white, Indian, Hispanic. I don't care what you are, that's all I do. You say you saw it on the news?
 
 
 19
 [brief discussion about a television show about police on which Frock had appeared]
 
 
 20
 Lattimore: What's the difference? If you do or you don't, it's going to happen anyway, right?
 
 
 21
 Frock: Not really. If you don't, I feel you're hiding something. Therefore, we'll call a drug dog up the road to come down here and let him search your car.
 
 
 22
 Lattimore: That's what I'm saying. It don't really make no difference.
 
 
 23
 Frock: Well ...
 
 
 24
 Lattimore: That's what I'm saying.
 
 
 25
 Frock: There's certain reasons why we do that.
 
 
 26
 Lattimore signed the form.
 
 
 27
 "[A] determination of whether a particular consent is truly voluntary is made by examining the totality of circumstances surrounding the consent." United States v. Rusher, 966 F.2d 868, 877 (4th Cir.), cert. denied, 113 S.Ct. 351 (1992). Frock's threat to bring in a dog overshadows all other elements of his encounter with Lattimore.
 
 
 28
 In Bumpers v. North Carolina, 391 U.S. 543 (1968), the Court held that "consent" given after an official falsely asserted that he had a warrant could not later be used to justify the search. Lattimore's "consent" to the search, after he was told in no uncertain terms that a search would be conducted regardless, is little different from the "acquiescence to a claim of lawful authority" that vitiated the "consent" in Bumpers. Id. at 549; see also United States v. White, 979 F.2d 539, 542 (7th Cir.1992) (noting that "[b]aseless threats to obtain a search warrant may render consent involuntary"). The majority's emphasis on the written form's declaration that Lattimore had the right to refuse to consent to the search ignores the reality of the situation. Lattimore did not voluntarily consent; he merely resigned himself to the inevitable.
 
 
 29
 I also disagree with the majority's holding that Lattimore was not illegally seized. The government concedes that Trooper Frock did not have the requisite "articulable suspicion" of criminal activity for even a brief seizure of the car to allow a drug dog to search it. Appellee's brief at 11. Absent such suspicion, however, police officers may ask questions only "as long as the police do not convey a message that compliance with their requests is required." Florida v. Bostick, 501 U.S. 429, ----, 111 S.Ct. 2382, 2386 (1991). Even if Lattimore felt free to leave right after receiving the warning ticket, Trooper Frock's announcement that he would bring in a dog immediately converted what may have been a consensual encounter into a detention. See United States v. McFarley, 991 F.2d 1188, 1192 (4th Cir.) (announcement that luggage was going to be detained to allow a drug dog to sniff it implicated defendant's Fourth Amendment rights "to the same extent as if the detention were of McFarley's person."), cert. denied, 114 S.Ct. 393 (1993). At that point, no reasonable person would have felt free to get in his car and leave. Lattimore was illegally seized, and the fruits of the search should have been suppressed.
 
 
 30
 I would vacate the conviction and remand with directions to grant the motion to suppress.
 
 
 
 [1]
 Trooper Frock's vehicle was equipped with a video camera that provided an audio and video record of the encounter between Lattimore and Trooper Frock
 
 
 [2]
 Lattimore does not claim that the initial stop of his vehicle was invalid
 
 
 [3]
 The dissent's citation to United States v. McFarley, 991 F.2d 1188 (4th Cir.), cert. denied, 114 S.Ct. 393 (1993), is unavailing. McFarley involved a substantially different set of facts; importantly, McFarley had consistently denied permission to search his luggage. We consider our decision with respect to the existence of a seizure to be controlled by Rusher, a case with facts nearly identical to those presented here. Moreover, the audio tape demonstrates that Lattimore gave his oral consent to the search of his vehicle before Trooper Frock mentioned the possibility of obtaining a "drug dog."
 
 
 [1]
 The majority characterizes Lattimore's oral consent as having been given "without hesitation or equivocation." Ante at 4. The district court found that, in response to the officer's request to search the car, "there is not an answer that can be heard [on the videotape], but there is an inference that he gave an affirmative response because the officer at that point said, 'Well, I've still got to get this written consent,' implying that he had given a consent upon being requested." J.A. 37
 
 
 [2]
 The record does not contain a transcription of the videotape. The transcription given here is my own